**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**JOSEPH L. BOYKIN,**

                                    **Plaintiff,**

**v.**                                                    **Case No. 3:14cv811**

**VIRGINIA DEPARTMENT OF JUVENILE JUSTICE,** *et al.,*

                            **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

    The defendants the Virginia Department of Juvenile Justice ("DJJ"),[1] Andrew Block

("Block"), Mark Gooch ("Gooch"), Eric Tignor ("Tignor"), Peggy Parrish ("Parrish"), Charles

Dockery ("Dockery"), David Grubich ("Grubich"), and Lakara Johnson ("Johnson") (collectively,

"Defendants"),[2] by counsel, submit the following Memorandum of Law in support of their Motion

to Dismiss the Complaint filed by the plaintiff, Joseph L. Boykin ("Boykin" or "Plaintiff"). [3]

---

[1] Plaintiff has named Beaumont Juvenile Correctional Center ("Beaumont") as a separate
defendant.  Beaumont was established under Va. Code § 66-13(A) as a facility for the
rehabilitation, education, training and confinement of juveniles committed to DJJ.  As an arm of
the DJJ, Beaumont cannot be sued as a separate entity.

[2]  It is not clear whether Block, Gooch, Tignor, Parrish, Dockery, Grubich and Johnson have
been sued in their individual capacities, or only in their official capacities.  Regardless, the
claims against each individual Defendant in both capacities must be dismissed.

[3] Gooch, Grubich and Dockery are no longer employees of DJJ.  Their names should be removed
from the proceedings in their official capacities.  *See* Fed. R. Civ. P. 25(d).  Block has succeeded
Gooch as Director, Parrish has succeeded Dockery as Superintendent, and Aaron Dixon has
succeeded Grubich as Assistant Superintendent.  Defendants respond on behalf of these
individuals in their official capacities only.  Gooch, Grubich and Dockery have not been properly
served in their individual capacities, and do not join in this motion in such individual capacity.
Grubich joins this motion is his individual capacity only to the extent that he challenges the
sufficiency of process under Fed. R. Civ. P. 12(b)(5).

I. <u>**Introduction**</u>

Plaintiff was arrested by the Henrico County Police Department for alleged assault and battery of a juvenile inmate.  He was prosecuted by the Powhatan County Commonwealth's Attorney, but the charges were dismissed.  Plaintiff now contends that DJJ instigated the investigation and prosecution of the charge because of racial and age bias.  Further, he claims that DJJ's actions were in retaliation for previous grievances he filed from 2006-2008 alleging various violations of state policy.

Based on these unsupported allegations, Plaintiff filed this Complaint against the DJJ and seven individual defendants alleging multiple violations of state and federal laws, including (1) discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) discrimination under the Age Discrimination in Employment Act, ("ADEA"), (3) violation of the Family Medical Leave Act ("FMLA"), (4) "intentional discrimination" under 42 U.S.C. § 1981 ("§ 1981"), and (5) unspecified due process claims under the Fifth and Fourteenth Amendments. Each of these claims should be dismissed.

II. <u>**Statement of Alleged Facts**</u>

Boykin is a former correctional officer at Beaumont.  On November 11, 2012, Boykin was part of a four-person extraction team responding to an incident in a housing unit in which an inmate refused to leave his holding cell.  Compl. ¶ II.10, at 8.  Boykin and the inmate engaged in an altercation that resulted in Defendant Johnson asking Boykin to "back off."  Pl.'s Ex. 8, at 9. After the situation was contained, the inmate accused Boykin of assaulting him.

Defendant Johnson, an African American, reported the incident to Assistant Superintendent Grubich, her supervisor at the time.  Plaintiff alleges that Grubich processed the "incident reports, statements, serious incident report, unit log book entries, supervisor log book

entries, medical records, at least 3 separate videos and audio of the allege[d] assault." Compl. ¶ II.10, at 8. Plaintiff next alleges Dockery "reviewed and 'signed off' in forwarding this information to [then Director] Mark Gooch." *Id.*

In his role as DJJ Investigator, Tignor received this information and began an internal investigation into the alleged assault. *Id.* Tignor presented this information to the Powhatan County Commonwealth's Attorney. On November 28, 2012, the Commonwealth's Attorney issued a warrant for Boykin's arrest for violating Va. Code § 18.2-57, assault and battery of an inmate. Pl.'s Ex. 9, at 1-2. Plaintiff has not alleged with any specificity how Johnson, Grubich, Dockery, Gooch or Tignor acted improperly, much less with racial or age bias, during the course of this investigation.

Pursuant to the Standards of Conduct Policy 1.60, made applicable to all Virginia state employees covered under the Virginia Personnel Act, Va. Code 2.2-2900 *et seq.*, DJJ suspended Boykin with pay during the pendency of the investigation. Administrative Procedures Standards of Conduct § 1.60(C)(2), at 11, *available at* http://www.dhrm.virginia.gov/docs/default-source/hrpolicy/pol1_60.pdf (authorizing the immediate removal of any covered state employee who "is under investigation for alleged criminal conduct that is related to the nature of his/her job or to the agency's mission"). Once Boykin was formally charged, DJJ suspended Boykin without pay pursuant to state policy. *See id.*, at § 1.60(C)(2)(b). Although state policy permits an agency to initiate disciplinary proceedings against employees during the pendency of a criminal trial, DJJ chose not to pursue that option.

The Powhatan Circuit Court dismissed the charge on May 1, 2013, and Boykin was reinstated. Pl.'s Ex. 9, at 2. On June 5, 2013, Boykin submitted a request for leave of absence. Compl. ¶ II.11, at 9. Boykin asserts that Dockery and Grubich "denied [his] request without

3

valid reasoning." *Id.*  On June 10, 2013, Boykin submitted a letter of resignation.  Compl. ¶ II.12, at 9.  Boykin maintained that he was "involuntarily resigning" under "extreme duress." Compl. ¶II.11, at 9.  Notably, Boykin does not allege that DJJ reduced his salary, docked his annual leave, or otherwise diminished his job responsibilities.

Despite his reinstatement, Boykin contends that the decision to prosecute him was the result of age and racial animus.  In support, Boykin alleges that he initiated approximately seven complaints alleging various violations of state policy from 2006-2011.  Specifically, Boykin filed complaints under the Virginia State Grievance Procedure ("State Grievance Procedure"), Va. Code §§ 2.2-3000 *et seq.,* and with the Office of the Inspector General ("OIG").  However, none of these complaints involved claims of racial or age discrimination.  In summary, Boykin's complaints were as follows:

1.   September 23, 2006 initiated an Office of the Inspector General ("OIG") investigation against Major Neumyer, who is not named in this lawsuit, made an unprofessional statement to him.  Specifically, Boykin alleges that Neumyer stated, "I understand you said you were smarter than me."  Pl.'s Ex. 1, at 1.  The Complaint contained no racially-charged statement from Neumyer or any DJJ official to Boykin.

2.   On May 4, 2007, Boykin initiated an OIG investigation into alleged supervisory misconduct by Assistant Superintendent Julius Day and Grubich.  Compl. ¶ II.2, at 6. Plaintiff alleges that on February 19, 2007, he was erroneously suspended for "refusing to follow a Supervisor's instructions.  Pl.'s Ex. 2, at 1.  Plaintiff does not allege that the disciplinary action was racially motivated.  Rather, he alleges that his suspension was in retaliation for filing a previous grievance under the State Grievance Procedure.  Compl. ¶ II.2, at 6; Pl.'s Ex. 2, at 5.

3.   On October 19, 2007, Plaintiff filed a grievance challenging DJJ's decision to not promote him to sergeant.  Compl. ¶ II.3, at 7.  Plaintiff alleged he was denied promotion to supervisory positions more than twenty-five (25) consecutive times in "retaliation for having previously used the Grievance Process."  Pl.'s Ex. 3, at 6.  Notably, none of the Defendants are named in the October 2007 Grievance.

4.   On November 1, 2007, Plaintiff filed a grievance challenging the disparity between his salary and other correctional officers with similar lengths of service.  Compl. ¶ II.4, at 7. Plaintiff alleges that correctional officers with less experience were paid more than Boykin, who had ten (10) years of experience.  *Id.*  Again, Boykin alleged "that the pay

denial was retaliatory." Pl.'s Ex. 3, at 6. Moreover, Boykin did not identify any of the named Defendants in his grievance. Pl.'s Ex. 3, at 7.

5.      On April 22, 2008, Plaintiff filed a grievance challenging DJJ's issuance of a Group II Written Notice. Compl. ¶ II.5, at 7. Plaintiff admits that the disciplinary action was rescinded on July 18, 2008. Although Plaintiff now alleges the issuance of the disciplinary notice was racially motivated, his grievance did not allege any racial animus. Pl.'s Ex. 3, at 7-9. Plaintiff fails to identify any of the Defendants as having participated in the disciplinary decision.

6.      On September 11, 2008, Plaintiff filed a grievance challenging DJJ's denial of a chair with back support. Compl. ¶ II.6, at 7. Plaintiff did not allege that the denial of the chair was racially motivated. Pl.'s Ex. 3, at 9. Moreover, Boykin did not identify any of the Defendants as having participated in that decision.

7.      On July 5, 2011, Plaintiff filed a grievance challenging "an incident of workplace violence and lack of accountability." Compl. ¶ II.9, at 8. Plaintiff alleges he was thrown into a garbage bin and injured by fellow correctional officers. Boykin withdrew the complaint. PL.'s Ex. 7, at 16. Nowhere in the grievance did Plaintiff allege racial discrimination. Pl.'s Ex. 7. Moreover, none of the individuals described in the grievance are named in the present lawsuit. Plaintiff alleges these facts constitute violations of state and agency policy. Compl. ¶ II.9, at 8.

Importantly, none of these grievances allege any racial animus. The only comment that Boykin currently even attributes to race was Major Neumyer statement, "I understand you said you were smarter than me." Pl.'s Ex. 1, at 1. However, nothing about that statement indicates racial animus. Moreover, the majority of the grievances do not identify any of the named Defendants as having participated in the prior disciplinary decisions. Plaintiff alleges generally that Grubich issued a disciplinary suspension against Boykin sometime in 2007. However, Boykin does not attribute any retaliatory or discriminatory intent to Grubich's alleged conduct beyond his speculative beliefs.

In support of his ADEA claim, Plaintiff alleges that he "and numerous current and former employees have had discussions concerning 'out with the old and in with the new.'" Plaintiff does not attribute these statements to any DJJ official, much less any of the named Defendants. Moreover, Plaintiff does not specify how DJJ officials acted on this alleged age-based animus.

### III.   Applicable Standards of Review

### A.   Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) "permits a party to move to dismiss an action of lack of subject matter jurisdiction." *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). "The burden of establishing the existence of subject matter jurisdiction rests upon the party which seeks to invoke the court's authority." *Id.*

"For motions made pursuant to [Fed. R. Civ. P. 12(b)(1)], the evidentiary standard depends upon whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction." *Id.* at 782-83 (internal quotation omitted). Specifically, "[i]f the defendant is attacking the sufficiency of the complaint, the court must accept all of the complaint's factual allegations as true." *Id.* at 783. By contrast, "if the defendant claims that the jurisdictional facts alleged in the complaint are untrue, the pleadings are regarded as mere evidence. The court then weighs the pleadings and all of the other evidence to determine whether subject matter jurisdiction exists." *Id.* (internal citation omitted).

Fed. R. Civ. P. 12(b)(1) is the proper mechanism to consider a motion to dismiss based on the Eleventh Amendment. *See Haley v. Va. Dep't of Health*, No. 4:12cv00016, 2012 U.S. Dist LEXIS 161728, at *5 n.2 (W.D. Va. Nov. 13, 2012) (noting that although the "Fourth Circuit has not resolved whether a motion to dismiss based on the *Eleventh Amendment* is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(2)," the "recent trend, however, appears to treat *Eleventh Amendment* Immunity motions under Rule 12(b)(1)" (citations omitted)).

### B.   Fed. R. Civ. P. 12(b)(5)

Under Fed. R. Civ. P. 12(b)(5), a claim may be dismissed for insufficiency of service of

process.  A "federal court cannot acquire in personam jurisdiction over a defendant who does not voluntarily appear unless he is served with process in a manner authorized by federal statute or rule."  *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249, 251 (4th Cir. 1974).

Service of an individual may be accomplished pursuant to the law of the state in which the district court is located or service is effected or by delivering service (i) to the individual, (ii) to his or her authorized agent, or (iii) to a person of suitable age and discretion at the person's home or usual place of abode.  *See* Fed. R. Civ. P. 4(e).  Under Virginia law, service on a natural person may be accomplished by delivering a copy of the summons and complaint (i) to the party, (ii) to a family member over the age of sixteen at the party's usual place of abode, or (iii) by posting a copy of the process to the main entrance of the party's abode and mailing a copy to the person's address not less than ten days before default judgment is entered.  Va. Code § 8.01-296.

## C.    Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Specifically, "[t]he function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint."  *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 783 (E.D. Va. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  "[D]ismissal is appropriate if it appears that the plaintiff is not 'entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'"  *Id.* (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

"To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'"  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In

other words, district courts must examine the complaint to determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The Supreme Court of the United States has explained that

[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

*Id*. at 555 (citations omitted). Thus, a complaint must provide a defendant more than mere "notice" of those claims that a plaintiff may bring against it:

Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id*. at 554 n.3 (*citing* 5 Wright & Miller § 1202, at 94, 95 ("Rule 8(a) 'contemplates the statement of circumstances, occurrences and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'")).

## IV.   Argument

### A.   Plaintiff Failed to Properly Serve the Complaint Upon Gooch, Grubich and Dockery in Their Individual Capacities.

On December 17, Plaintiff attempted to serve the Complaint on DJJ and the individual Defendants Block, Tignor, and Gooch at DJJ's Richmond headquarters. Dk. Nos. 4-5. The process server "returned the summons [for Gooch] unexecuted" because Gooch was no longer an employee

of DJJ.  Dk. No. 5.  On December 22, 2014, Plaintiff attempted to serve the Complaint on Parrish, Johnson, Grubich and Dockery at Beaumont.  Dk. No. 9.  Although the receptionist at Beaumont accepted service, DJJ can only accept service against individuals with respect to claims in their official capacity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").  Because Grubich and Dockery are no longer employees of DJJ, Beaumont's acceptance of service of the Complaint on their behalves should be transferred to their successors.  *See* Fed. R. Civ. P. 25(d).

Moreover, Gooch, Grubich and Dockery have not authorized DJJ to accept service of the complaint in their individual capacities.  Fed. R. Civ. P. 4(e) and Va. Code § 8.01-296 plainly do not authorize former employers to accept service of process on behalf of former employees.  *Cf. Poole v. Pass*, 351 F. Supp. 2d 473, 477 n.9 (E.D. Va. 2005) ("[S]ervice on a co-worker at a person's place of work is insufficient to serve an individual sued in his individual capacity.").  Because Plaintiff failed to properly serve Gooch, Grubich and Dockery, this Court lacks personal jurisdiction over them in their individual capacity.  Accordingly, the Complaint against them in their individual capacity must be dismissed.

**B.     Plaintiff's ADEA Claims Must Be Dismissed.**

In support of his ADEA claim, Plaintiff alleges that he "and numerous current and former employees have had discussions concerning 'out with the old and in with the new.'"  Plaintiff does not attribute these statements to any DJJ official, much less any of the named Defendants.  Moreover, Plaintiff does not specify how DJJ officials acted on this alleged age-based animus.  Therefore, Plaintiff cannot make out a viable ADEA claim.  However, assuming *arguendo,* that he could allege age based discrimination, his ADEA claims still fail for the following reasons.

1. **Plaintiff's ADEA Claims Against DJJ and the Defendants in Their Official Capacities Are Barred by the Eleventh Amendment.**

Boykin brings an ADEA claim against DJJ and the individual defendants.  Because DJJ is an agency of the Commonwealth pursuant to Virginia Code § 66.1, it is entitled to Eleventh Amendment Immunity from suit.  "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  It is well settled that the states' immunity extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. V. Doe*, 519 U.S. 425, 429 (1997).  The ultimate guarantee of the Eleventh Amendment is that nonwaiving states, and their agents, may not be sued by private individuals in federal court.

In *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (1991), the Supreme Court held that Eleventh Amendment immunity specifically is applicable to suits under the ADEA because "the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment."  In *Kimel*, the Supreme Court precluded an award of money damages against a State under the ADEA.   To the extent Boykin alleges a violation of the ADEA against the Defendants in their official capacities, they are also entitled to this immunity.  *Hafer*, 502 U.S. at 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").  As such, Boykin's lawsuit alleging violations of the ADEA by DJJ and the Defendants in their official capacities must be dismissed with prejudice.

2. **There Is No Individual Liability Under the ADEA.**

The individual defendants are not "employers" under the ADEA, and they are not subject to liability in their individual capacities.  "The ADEA limits civil liability to the employer[.]" *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994).  "Accordingly, [the Court has] rejected . . . claim[s] of individual liability under the ADEA." *Lissau v. So. Food Serv., Inc.*, 159

F.3d 177, 180 (4th Cir. 1998) (citing *Birkbeck*, 30 F.3d at 510). Accordingly, Plaintiff's ADEA claims against the individual defendants must be dismissed with prejudice.

**C.**   **Plaintiff's Title VII Claims Must Be Dismissed.**

**1.**   **Statute of Limitations**

Plaintiff's claims for racial discrimination and retaliation under Title VII are barred by the statute of limitations. In order to assert a timely violation of Title VII, plaintiffs in Virginia must first file a charge with the EEOC within 300 days after the alleged unlawful practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011). An "unlawful employment practice" occurs on the day in which an employer engages in a "discrete act" of discrimination. *AMTRAK v. Morgan*, 536 U.S. 101, 111 (2002). Discrete acts include "acts such as termination, failure to promote, denial of transfer, or refusal to hire[.]" *Id.* at 114. "[D]iscrete discriminatory acts are not actionable if time barred[.]" *Id.* at 113.

Here, Plaintiff filed his Charge of Discrimination on January 24, 2014. Pl.'s Ex. 17. Any discrete act that occurred prior to March 30, 2013, is therefore time-barred and cannot form the basis of a Title VII complaint. Plaintiff's Charge of Discrimination specifically states that the adverse employment action that serves as the basis for his Title VII discrimination and retaliation claims occurred in November 2012. Plaintiff has alleged no other discrete discriminatory or retaliatory act since that date. Because the alleged discriminatory investigation occurred outside the 300-day statute of limitations period, Plaintiff's Title VII racial discrimination and retaliation claims must be dismissed with prejudice.

**2.**   **There Is No Individual Liability Under Title VII.**

Similar to the ADEA, there is no individual liability under Title VII. The Fourth Circuit has plainly rejected individual liability under Title VII. *Lissau*, 159 F.3d at 181 ("Supervisors are not

liable in their individual capacities for Title VII violations."). "Congress only intended employers to be liable for Title VII violations." *Id.* at 181. Accordingly, Plaintiff's ADEA and Title VII claims against the individual defendants must be dismissed with prejudice.

### 3. Plaintiff's Race Discrimination Claim under Title VII Fails as a Matter of Law.

To prevail on a Title VII racial discrimination claim, Plaintiff must allege that: (1) he is a member of a protected class; (2) that he suffered an adverse employment action; (3) at the time of his employer's adverse action, he was performing up to his employer's expectations; and (4) other similarly situated employees who are not members of the class received more favorable treatment. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999). In this case, Plaintiff cannot allege that DJJ acted on the basis of race, that he suffered an adverse employment action, or that similarly-situated employees outside his protected class received favorable treatment.

### a. Plaintiff Has Failed to Allege that DJJ Acted on the Basis of Race

A plaintiff may present direct evidence to prove a violation under Title VII. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd* 132 S. Ct. 1327 (2012). "What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995).

Plaintiff's Complaint conclusorily alleges that Boykin was constructively discharged based on his race. However, Plaintiff does not allege any facts establishing the plausibility of that allegation. Indeed, Plaintiff has alleged no conduct or statements that reflect, in any way, on Plaintiff's race. Moreover, the criminal prosecution that is the subject of his complaint was independently evaluated by the Powhatan Commonwealth's attorney who brought the criminal

12

charges.  Plaintiff's allegation is, at best, a recitation of DJJ officials forwarding information regarding potential inmate abuse to the responsible authorities.

> **b.      Plaintiff Has Failed to Allege that He Suffered an Adverse Employment Action**

"To prevail on his Title VII claim, plaintiff must show that he suffered an adverse employment action as a result of Title VII disparate treatment." *Bauer v. Holder*, 25 F. Supp. 3d 842, __ (E.D. Va. 2012).  "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (citation omitted).  Where, as here, the plaintiff voluntarily quits his job, he has the additional burden of alleging that he was constructively discharged.  *See Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004).  To demonstrate constructive discharge, plaintiffs must allege and prove: (1) the deliberateness of the employer's actions, motivated by discriminatory bias, and (2) the objective intolerability of the working conditions.  *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004).

Plaintiff has not stated any facts that could plausibly support an allegation of constructive discharge.  With respect to the first element, Boykin contends he was the victim of a "false arrest."  However, Boykin has not plausibly alleged any fact that calls the propriety of DJJ's investigation into question.  Plaintiff merely speculates that because the charge was dismissed, DJJ must have acted maliciously.  DJJ cannot be expected to ignore a serious concern of abuse against a juvenile in its care merely because the accused has consistently filed grievances in the past.  Second, Plaintiff asserts his arrest was calculated to encourage resignation.  Compl. II, at 5.  However, Boykin ignores the fact that it was the Attorney for the Commonwealth who initiated the criminal indictment against him.  *See* Va. Code § 15.2-1627 (B) (conferring upon attorneys of the Commonwealth "the duty of prosecuting all warrants, indictments or informations

charging a felony, and he may in his discretion, prosecute Class 1, 2 and 3 misdemeanors, or any other violation").  DJJ merely provided to the prosecutor the information it had gathered during the course of the investigation.  Notably, state policy authorized DJJ to initiate disciplinary proceedings against Boykin during the pendency of the criminal investigation.  Administrative Procedures Standards of Conduct § 1.60(C)(2)(d), at 12.  DJJ opted not to pursue this option, however, and reinstated Boykin immediately following the dismissal of the criminal charge. Boykin has not alleged that he suffered a demotion, reduction in pay, or diminution in job responsibilities.  Third, Boykin asserts he was the victim of workplace violence and cites an incident in which he was thrown into a garbage bin.  Pl.'s Ex. 14, at 1.  However, this incident occurred in 2011, and Boykin utilized the State Grievance Procedure to address that incident. PL.'s Ex. 7, at 16.  Finally, Boykin cites DJJ apparent refusal to qualify his grievances for a hearing as part of the "intolerable working conditions" that led to him resigning.  However, as Boykin himself is well aware, the Virginia General Assembly amended the State Grievance Procedure to preclude either the grievant or the employer from appealing a qualification ruling. Pl.'s Ex. 13.  Boykin cannot fault DJJ for not appealing a state grievance ruling when state law precludes it from doing so.

Importantly, Boykin cannot allege that any of the actions of his supervisors were deliberate or calculated to cause him to resign.  Indeed, mere dissatisfaction with the State Grievance Procedure cannot lead to the conclusion "that a reasonable employee would have found the challenged action materially adverse."  *Burlington N. & Santa Fe Ry v. White.*, 548 U.S. 53, 68 (2006).  That is to say that he was not punished, demoted, terminated or otherwise retaliated against in anyway once the criminal charges against him were dismissed.

Second, Boykin cannot meet the "objective intolerability" standard for constructive

14

discharge.  A prima facie case for retaliatory constructive discharge requires "something more" than actionable retaliation. *Suders*, 542 U.S. at 147; *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding that retaliatory constructive discharge requires more than *prima facie* case of retaliatory adverse employment action).  The bar is quite high in constructive discharge cases.  A plaintiff must show he had no other choice but to quit.  *See, e.g., Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 273 (4th Cir. 2001) (denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position…would not have compelled the reasonable person to resign.  These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable"); "'[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'"  *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)).  Simply put, an employee is not guaranteed "a working environment free of stress."  *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993) (citation omitted).

Boykin cannot allege conduct by Defendants that was "so intolerable that a reasonable person in [Plaintiff'] position would have felt compelled to resign."  *Suder*, 542 U.S. at 141.  The most Boykin can allege is that he was the subject of an investigation into his alleged assault of an inmate.  Compl. ¶ II, at 5.  Boykin cannot allege that DJJ's internal investigation procedure created "intolerable" working conditions for Plaintiff, especially where the criminal indictment was dismissed and Boykin suffered no tangible loss.  In fact, Boykin has utilized the State Grievance Procedure with considerable success to rescind disciplinary notices issued by supervisors who are no longer employed at DJJ.  Because Plaintiff cannot allege that he was constructively discharged, he cannot meet his burden of proving an adverse employment action.

Without an adverse employment action, Plaintiff's Title VII racial discrimination claim fails as a matter of law and must be dismissed.

### c.    Plaintiff Has Failed to Allege that Other Similarly Situated Employees Outside the Protected Claim Received More Favorable Treatment

"In evaluating similarly-situated comparators, employees are similarly situated if they are similar in all relevant respects." *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 674 (E.D. Va. 2009). The plaintiff must allege "evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Heyward v. Monroe*, No. 97-2430, 1998 U.S. App. LEXIS 30855, at *7 (4th Cir. Dec. 7, 1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1982)).

Here, Plaintiff has alleged no credible evidence of other employees outside his protected class that engaged in his type of misconduct and received lesser punishments. Specifically, Plaintiff provides no evidence, direct or circumstantial, of any other employee whose conduct mandated a criminal investigation. In his Charge of Discrimination, Plaintiff alleges two white officers—Reid and Starling—were involved in an incident where an inmate took keys and used them to enter the cell of another inmate's cell and beat him up. Pl.'s Ex. 17. Plaintiff asserts that these officers were not compelled to resign, nor was their employment terminated.

Plaintiff has failed to alleged sufficient facts to plausibly allege that these officers were similarly situated and treated more favorably to Boykin. First, Boykin's suspension was mandated by state policy; DJJ was compelled to suspend him with pay during the investigation and without pay after the criminal indictment. Though the conduct of officers Reid and Starling might give rise to disciplinary action, it does not give rise to a criminal investigation. Second, Plaintiff cannot plausibly allege that he was treated differently from Reid and Starling because like those officers,

Plaintiff was not terminated.  DJJ reinstated Boykin to his former position with full back pay.  To the extent Plaintiff alleges Reid and Starling were not disciplined, it is clear that DJJ restored Boykin to his former position as if no disciplinary action had taken place.

In sum, Plaintiff has failed to allege any evidence of a similarly situated employee that engaged in such gross acts of misconduct that required a criminal investigation but was treated more leniently.  In fact, Plaintiff fails to allege any evidence whatsoever that would plausibly state that his race had anything to do with an adverse employment action taken against him. Without such evidence, Plaintiff cannot plausibly assert a prima facie case, and his Title VII racial discrimination claim fails as a matter of law and must be dismissed.

### 4.    Plaintiff's Retaliation Claims under Title VII Fail as a Matter of Law

Plaintiff's retaliation claims fail as a matter of law.  To establish a prima facie retaliation claim under Title VII, a plaintiff must show: (1) "engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action."  *Coleman*, 626 F.3d at 190 (citation omitted).  Plaintiff has failed to allege specific facts that would plausibly support any of these three elements.

### a.    Plaintiff Has Failed to Allege that He Engaged in a Protected Activity

Title VII sets forth that both opposition and participation activities are protected against retaliatory action.  42 U.S.C.A. § 2000e-3(a).  "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim.  Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citation omitted).  "Activities that constitute participation are outlined in the statute: (1) making a charge; (2)

testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003).

It is axiomatic that such activities must actually be related to an underlying Title VII concern. "The 'unlawful employment practices' that an employee can oppose, and thereby be protected from retaliation, include practices that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(a)(1)). The Plaintiff must have either opposed or participated in complaints alleging discriminatory activities made unlawful under Title VII (e.g., discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.") 42 U.S.C. § 2000e-2(a)(1). Boykin has not alleged that he either opposed or participated in such activities.

Instead, the grievances that Boykin has filed under the State Grievance Procedure since 2006 involve only state policy considerations; they do not constitute "opposition" to any action by DJJ or the Defendants that would constitute an "unlawful employment practice" under Title VII. Although Boykin attempts to retroactively characterize his grievances as complaints of racial discrimination, a clear reading of the grievances themselves demonstrates that these complaints consisted only of personal grievances against DJJ. The September 23, 2006 OIG investigation involved a disciplinary notice that was later rescinded. Pl.'s Ex. 1, at 1. The May 4, 2007 OIG investigation involved another suspension that Plaintiff alleges was retaliatory in nature. However, the retaliatory nature of the suspension touches upon state policy and not Title VII concerns. Pl.'s Ex. 2, at 5. The October 2007 grievance similarly alleged that Boykin was

being denied promotion on the basis of his non-Title VII complaints against DJJ.  Pl.'s Ex. 3, at 6.  The November 2007 grievance simply challenged the disparity in pay between Boykin and other officers.  Boykin never mentioned race.  Pl.'s Ex. 3, at 7.  The April 22, 2008 grievance challenged a disciplinary notice that was later rescinded because Boykin had been issued two conflicting protocols.  Pl.'s Ex. 3, at 8.  The September 2008 grievance merely requested a preferred style of chair.  Plaintiff made an informal complaint to DJJ Deputy Director John Coble on November 20, 2008, but Plaintiff has not alleged any facts related to that conversation.  Compl. ¶ II.7, at 8.  Without more, this Court can only speculate whether Boykin "opposed" any action by DJJ that would constitute an "unlawful employment practice" under Title VII.  Finally, the July 5, 2011 grievance challenged an incident of workplace violence with no mention of any racial motivation.  Pl.'s Ex. 7.

Each of these grievances is completely devoid of any mention of race, thereby defeating any reasonable belief Boykin could have had that he was calling DJJ's attention to discriminatory practices.  *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) ("We have recognized that section 704(a) protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful.").  Therefore, Plaintiff failed to allege that he engaged in any protected activity and has not met his burden under *Twombly/Iqbal* to plead sufficient facts to support his allegation that he engaged in protected activity.

### b.     Plaintiff Did Not Suffer an Adverse Employment Action

Boykin must also show an adverse employment action to prevail on his retaliation claim.  In retaliation claims, like in racial discrimination claims, the plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, 'which in this

context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. 2006)).  Where, as here, the plaintiff voluntarily quits his job, he has the additional burden of alleging that he was constructively discharged.  *See Suders*, 542 U.S. at 143 (2004).  To demonstrate constructive discharge, plaintiffs must allege and prove: (1) the deliberateness of the employer's actions, motivated by discriminatory bias, and (2) the objective intolerability of the working conditions.  *Honor*, 383 F.3d at 186-87.

As discussed in Part IV(C)(3)(b), Boykin cannot allege that any of the actions of his supervisors were deliberate or calculated to cause him to resign or so intolerable that a reasonable person in his position would have felt compelled to resign.  The facts Plaintiff has alleged simply do not support his speculative beliefs that DJJ instigated the criminal investigation to retaliate against him for his prior grievances alleging violations of state policies.

### c.    No Causal Link Exists

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action[,]" and not merely a "motivating factor."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 2534 (2013).  "[B]y definition," a plaintiff alleging retaliation "must show . . . that the defendant was aware of her engaging in protected activity."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).  Further, there must be "some degree of temporal proximity to suggest a causal connection."  *Id.*  A "lengthy time lapse between the [defendants'] becoming aware of the protected activity and the alleged adverse . . . action" often "negates any inference that a causal connection exists between the two."  *Id.* (citation omitted).

Plaintiff has alleged multiple "protected activities" that go back as far as 2006.  His most recent "protected activity" occurred on July 5, 2011.  Beyond his speculative beliefs, Boykin has not alleged any facts to support his allegations that DJJ acted with retaliatory motive in response to these complaints.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Indeed, Boykin does not allege any adverse incident until DJJ's investigation in November 2012—well over one year after his most recent complaint to DJJ.  Without more, this lengthy span of time negates any inference that a causal connection exists between the 2012 complaint and the alleged adverse incident.  *See e.g.*, *Shields v. Fed. Exp. Corp.*, 120 Fed. Appx 956, 963 (4th Cir. 2005) (holding that a three to four month gap is insufficient to establish temporal proximity); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.").  Consequently, Plaintiff failed to sufficiently allege that the protected activity was the "but for" cause of the challenged employment actions.

**D.    <u>Plaintiff's § 1981 Claims Must Be Dismissed.</u>**

Plaintiff's § 1981 claim against all Defendants fails as a matter of law because § 1981 does not provide a remedy that can be redressed in federal court.  The Fourth Circuit has unambiguously joined the majority of the circuit courts to hold that Congress did not create a cause of action against individual state actors under § 1981.  *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).  Although § 1981 provides a right protecting against both private and state actors' violations, it does not provide a remedy for that violation.  *Id.*; *see McGovern v. City of Philadelphia*, 554 F.3d 114, 120 (3d Cir. 2009) (holding that § 1981(c) "created a substantive *right* that both private and state actors must refrain from violating, but the amendment did not create a *remedy* for that violation." (Emphases in original)).  This rationale applies to all Defendants in both their official and individual

21

capacities.  *See McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (holding that the logic of denying a remedy in § 1981 actions against individuals in their official capacity applied to individuals sued in their personal capacity).  Accordingly, Plaintiff's § 1981 claim against all the Defendants must be dismissed in its entirety with prejudice.

**E.**   **Plaintiff's Due Process Claim Fails Because He Has Not Identified Any Liberty Interest that DJJ Violated.**

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest.  *See Bd. of Regents of State Colls, v. Roth*, 408 U.S. 564, 569-70 (1972).  Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest.  *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted).

Boykin has failed to demonstrate that he had any legitimate liberty interest that DJJ violated during the course of its investigation into the alleged physical abuse.  Plaintiff alleges that the Defendants "created a type of malicious prosecution based on 'guilt by association.'"  However, Plaintiff does not plausibly allege how "guilt by association" played into the investigation.  Plaintiff also alleges he was denied his liberty of "decid[ing] who may visit or enter his home."  Again, Boykin simply has not explained in any rational detail how he was denied this "right" or how this "right" arises from the Constitution itself, state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005).  Moreover, Plaintiff has not alleged any evidence beyond his conclusory assumptions that suggests the DJJ's investigation was improper.

Plaintiff further alleges that he was denied due process related to the incidents of his indictment.  Specifically, Boykin alleges he was denied notice of accusation, Brady disclosure evidence, the right to confront his accusers, and of his presumption of innocence.  It is manifestly unclear how these liberties were violated, especially when his criminal charge was dismissed

before any trial began.  Moreover, Plaintiff's allegations ignore the critical fact that DJJ did not prosecute him.  Rather, Tignor supplied the Commonwealth's Attorney with the information he gathered from his investigation, and the Commonwealth's Attorney, in its discretion, chose to go forward with the indictment.  *See* Va. Code § 15.2-1627 (B) (conferring upon attorneys of the Commonwealth "the duty of prosecuting all warrants, indictments or information charging a felony, and he may in his discretion, prosecute Class 1, 2 and 3 misdemeanors, or any other violation").  Plaintiff has not alleged how Tignor denied Boykin due process simply by performing his job investigating the alleged assault.

In summary, Plaintiff has not identified any cognizable liberty that requires the protections of the Due Process Clause.  Moreover, Plaintiff has not plausibly alleged how the Defendants impeded his due process rights.

**F.** **Sovereign Immunity Bars Plaintiff's June 5, 2013 FMLA Claim**

Boykin alleges the Defendants violated the FMLA when Grubich and Dockery denied his request for leave on June 5, 2013.  It is unclear the precise nature of Plaintiff's claim.  However, is appears he relies on the self-care provision of 29 U.S.C. § 2612(a)(1)(D).

The Fourth Circuit has plainly held that "Congress did not validly abrogate sovereign immunity as to the FMLA's self-care provision."  *Coleman*, 626 F.3d at 194.  That decision has been affirmed by the United States Supreme Court in a plurality decision.  *See Coleman*, 132 S. Ct. at 1334 (plurality opinion) ("Standing alone, the self-care provision is not a valid abrogation of the States' immunity from suit.").  Accordingly, Plaintiff's FMLA claim against the Defendants in their official capacities must be dismissed with prejudice.

With respect to the Defendants in their individual capacities, the only Defendants associated with Boykin's FLMA claim are Grubich and Dockery.  As discussed above, neither individual has

been properly served in their individual capacity.  Accordingly, Plaintiff's FMLA claim as it relates to Grubich and Dockery in their individual capacities must be dismissed.

In any event, Boykin "cannot circumvent the *Eleventh Amendment* by naming [Dockery and Grubich] as defendants in their individual capacities if, in reality, [he] is suing them for actions taken by them in their official capacities on behalf of" DJJ.  *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014).  In *Lizzi v. Alexander*, the Fourth Circuit held that the plaintiff could not maintain FMLA claims against state supervisors in their individual capacities.  255 F.3d 128, 136-37 (4th Cir. 2001). The Fourth Circuit held that "Plaintiffs like Lizzi would easily be able to evade the *Eleventh Amendment* prohibition against suing a state merely by naming the individual supervisor as the employer." *Id.* at 137.  Although the Supreme Court of the United States later overruled *Lizzi* in part, *see Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, (2003) (holding that the family-care provision of the FMLA constituted a valid abrogation by Congress of states' immunity), the rationale of the Fourth Circuit's decision *Lizzi* as it applies to self-care FMLA claims against state supervisors in their individual capacities remains untouched.  *See generally*, *Coleman*, 626 F.3d at 193 n.4 (explaining the impact of the Supreme Court's decision in *Hibbs* on the *Lizzi* decision).  In other words, this Court must "look beyond the form of complaint and the conclusory allegations against [Dockery and Grubich] to determine who is the 'real, substantial party in interest.'" *Martin*, 772 F.3d at 196 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).

Boykin conclusorily alleges that Dockery and Grubich denied his request for leave "without valid reasoning." Compl. ¶ II.11, at 9.  Nothing in the Complaint indicates that Dockery and Grubich acted outside their official capacities.  In other words, without more, Plaintiff's alleged unlawful actions by Dockery and Grubich were "tied inextricably to their official duties." *Lizzi*, 255

F.3d at 136.  Thus, DJJ, and consequently the Commonwealth of Virginia, are the real parties in interest, and Plaintiff's FMLA claims against Dockery and Grubich must be dismissed.

**G.      Violations of State and DJJ Policies**

To the extent Plaintiff attempts to resurrect his grievance claims under the State Grievance Procedure, those claims must fail.  Virginia has created a comprehensive system by which most state employees may challenge certain management actions through a grievance procedure first initiated within the affected agency itself.  Grievances that qualify may proceed thereafter beyond the employing agency to an independent hearing officer and then, if appropriate, through the state circuit courts.  This procedure is created and governed by Virginia Code § 2.2-3006 *et seq.  See also Va. Dep't of State Police v. Barton*, 573 S.E.2d 319, 322 (Va. App. 2002).  This process does not include review by a federal court.

**H.      Title VII Does not Allow Punitive Damages against Government Defendants or Authorize Discovery Requests as a Form of Relief**

With respect to his prayer for relief, Boykin seeks (i) "equitable relief which would put [him]self into the economic position [he] would have been in had the [alleged] discrimination not occurred[,]" totaling $350,000; (ii) "[c]ompensatory damages in the amount of $300,000 to include the cost of [his] medication[;]" (iii) "[p]unitive damages in the amount of $300,00.00 [sic] due to loss of assets[;]" and (iv) "[a]ttorney fees (over $25,000) paid over the 6 year period to attorneys, grievant advocates, Employment Law Groups and associated costs in challenging these acts to include expunge of criminal record[.]"  Compl. at 9-10.

The damages that may be awarded to an employee who is the victim of intentional discrimination or retaliation in employment under Title VII are detailed in 42 U.S.C. § 1981a. § 1981a specifically prohibits punitive damages against any "government, government agency or political subdivision."  42 U.S.C. § 1981a(b)(1).  Thus, punitive damages cannot be awarded against

a government respondent, such as DJJ.  Such claims must be dismissed.  *See e.g.*, *Joyner v. Fillion*, 17 F. Supp. 2d 519, 529 (E.D. Va. 1998) (dismissing the plaintiff's claim for punitive damages under Title VII because the defendant was a government agency).

## IV.  Conclusion

The Defendants respectfully requests that their Motion to Dismiss be granted, that Plaintiff's Complaint (and all the claims made therein) be dismissed, with prejudice, that the Defendants be awarded its costs incurred herein, and that such other relief be granted as the Court deems just and appropriate.

## V.  *"ROSEBORO* NOTICE"

Consistent with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), as well as Local Rule 7(K), the following advises the *pro se* plaintiff herein, Joseph L. Boykin, that:

(1)  he is entitled to file a response opposing Defendants' Motion to Dismiss.

Any such response must be filed **within twenty-one (21) days** of the date on which the Motion to Dismiss was filed;

(2)  the Court could dismiss this action on the basis of the Defendants' moving papers if he does not file a response;

(3)  he must identify all facts stated by the Defendants with which he disagrees and must set forth his version of the facts by offering affidavits (written statements signed before a notary public under oath) or by filing sworn statements (bearing a certificate that is signed under penalty of perjury); and

(4)  he also is entitled to file a legal brief in opposition to the one filed by the Defendants herein.

26

Respectfully Submitted,

**VIRGINIA DEPARTMENT OF JUVENILE JUSTICE,
ANDREW BLOCK in his official and individual
capacities,
ERIC TIGNOR in his official and individual capacities,
PEGGY PARRISH in her official and individual
capacities,
LAKARA JOHNSON in her official and individual
capacities,
MARK GOOCH, in his official capacity,
CHARLES DOCKERY in his official capacity, and
DAVID GRUBICH in his official and individual
capacities.**

By: _____/s/_____
      **Ryan S. Hardy**
      VSB No. 78558
      Counsel for Defendant
      Office of the Attorney General
      900 East Main Street
      Richmond, Virginia  23219
      (804) 786-0969
      (804) 371-2087 (fax)
      *rhardy@oag.state.va.us*

Mark R. Herring
Attorney General of Virginia

Rhodes Ritenour
Deputy Attorney General

**Ryan S. Hardy\***
Assistant Attorney General

**\*Counsel of Record for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this <u>21st</u> day of <u>January</u>, <u>2015</u>, the foregoing **MEMORANDUM**

**OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** was filed electronically

with the Clerk of Court using the CM/ECF system, which will send notification of such filing

(NEF), and sent via electronic mail and first class, postage prepaid, to the following:

Joseph L. Boykin
4907 Sulky Drive, Apt. 101
Richmond, VA 23228
Jboykin149@yahoo.com
**PLAINTIFF PRO SE**

By:     _____/s/_____
        Ryan S. Hardy
        Virginia Bar Number: 78558
        Counsel for Defendant
        Office of the Attorney General
        900 East Main Street
        Richmond, Virginia  23219
        Telephone: (804) 786-0969
        Fax: (804) 371-2087
        E-mail:  *rhardy@oag.state.va.us*