IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| JOSEPH L. BOYKIN,             ) | |
|             ) | |
|      Plaintiff,           ) | |
|             ) | |
| v.             ) | |
|             )    Case No. 3:14CV811–HEH | |
| COMMONWEALTH OF VIRGINIA   ) | |
| DEPARTMENT OF JUVENILE JUSTICE,   ) | |
| *et al.*,             ) | |
|             ) | |
|      Defendants.        ) | |

## MEMORANDUM OPINION
### (Granting Motion to Dismiss)

Plaintiff Joseph L. Boykin ("Plaintiff" or "Boykin"), proceeding *pro se*, brings this action against his former employer, supervisors, and coworkers, alleging various violations of his constitutional and civil rights.   Boykin was employed as a corrections officer at the Beaumont Juvenile Correctional Center, an institution established under the purview of the Commonwealth of Virginia Department of Juvenile Justice, from 1997 until June 10, 2013, when he resigned.   Boykin's Complaint describes a number of circumstances in which he alleges he was the victim of racial discrimination, age discrimination, and retaliation.   The primary incident of which Boykin complains occurred in November 2012, when Boykin asserts that he was falsely accused of assaulting an inmate and thereafter arrested.   His criminal charges were ultimately dismissed, and Boykin now brings this civil action to recover for the alleged wrongs his former employer, supervisors, and coworkers inflicted upon him.

The matter is before the Court on a Motion to Dismiss pursuant to various subsections of Rule 12 of the Federal Rules of Civil Procedure, filed on January 21, 2015, with a memorandum in support thereof and the appropriate Roseboro Notice (ECF Nos. 15, 16). *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed a response on February 11, 2015 (ECF Nos. 17, 18),[1] to which Defendants replied on February 18, 2015 (ECF No. 19).

On February 27, 2015, Plaintiff filed a "Motion Application Requesting Defendants Comply with Federal Rules of Civil Procedure: Rule 26 Duty to Disclose" (ECF No. 20) and a "Motion Application Requesting Appointment of Attorney" (ECF No. 21), to which Defendants responded on March 12, 2015 (ECF Nos. 23, 24). A few days later, Plaintiff filed a "Motion Application Requesting Summary Judgment" (ECF No. 22). Defendants filed a response in opposition on March 16, 2015 (ECF No. 25).

On July 21, 2015, Plaintiff filed additional exhibits, which he requested the Court to review in consideration of his opposition to the Motion to Dismiss (ECF No. 26). Defendants filed a brief in opposition to Plaintiff's additional exhibits on July 28, 2015 (ECF No. 27). For the reasons stated herein, the Motion to Dismiss will be granted; and accordingly, the remaining motions will be denied as moot.

## I.     Overview of Defendants and Causes of Action

Before turning to the merits of the motion, the Court finds it necessary to clarify the status of the named defendants and the nature of Boykin's claims against each. The

---

[1] In response to the Motion to Dismiss, Plaintiff filed his "Motion Application Denying Defendants Motion to Dismiss" and a "Memorandum of Law Opposing Defendants Motion to Dismiss." The Court will treat Plaintiff's filings as a single brief in opposition, particularly given his *pro se* status.

Complaint names the following defendants:

> Commonwealth of Virginia Department of Juvenile Justice ("DJJ");
> Andrew Block, Director ("Block");
> Mark Gooch, Director ("Gooch");
> Eric Tignor, Department Investigator ("Tignor");
> Beaumont Juvenile Correctional Center ("Beaumont");
> Peggy Parrish, Superintendent ("Parrish");
> Charles Dockery, Superintendent ("Dockery");
> David Grubich, Assistant Superintendent ("Grubich"); and
> Lakara Johnson, Lieutenant ("Johnson").

Although the Motion to Dismiss questions whether Block, Gooch, Tignor, Parrish, Dockery, Grubich, and Johnson have been sued in their individual capacities, or only in their official capacities, the Court, construing the pleadings in the light most favorable to the plaintiff, as it must, views Boykin's Complaint as bringing this action against each individual defendant in both their official and individual capacities. (*See* Compl. pt. 1, at 3, Dec. 11, 2014, ECF No. 7 ("Federal Practice Manual 8.2 allows for suit against public officials in their individual and official capacity.").)

The Motion to Dismiss represents that Gooch, Grubich, and Dockery are no longer employees of DJJ. Block has succeeded Gooch as Director of DJJ, Parrish has succeeded Dockery as Superintendent at Beaumont, and Aaron Dixon currently serves as Assistant Superintendent of Beaumont, rather than Grubich. Pursuant to the Federal Rules of Civil Procedure, the Court substitutes each individual defendant's successor as the proper party with respect to the official capacity claims. Fed. R. Civ. P. 25(d).

Additionally, the Court will dismiss Beaumont as a party. Beaumont is a facility operated and governed by DJJ; and as such, Beaumont is not an entity with the independent capacity to be sued. *See* Va. Code § 66-13(A). Plaintiff's inclusion of DJJ as a named

defendant sufficiently encompasses Beaumont.

Accordingly, the defendants to this matter and the capacity in which they are sued

are as follows:

> Commonwealth of Virginia Department of Juvenile Justice ("DJJ");
> Andrew Block, Director (DJJ), official and individual capacities;
> Eric Tignor, Department Investigator (DJJ), official and individual capacities;
> Peggy Parrish, Superintendent (Beaumont), official and individual capacities;
> Lakara Johnson, Lieutenant (Beaumont), official and individual capacities;
> Aaron Dixon, Assistant Superintendent (Beaumont), official capacity only;
> Mark Gooch, individual capacity only;
> Charles Dockery, individual capacity only; and
> David Grubich, individual capacity only.[2]

Defendants Block, Tignor, Parrish, Johnson, and Dixon, as well as DJJ and

Beaumont have been properly served and are represented by the Commonwealth of

Virginia Office of the Attorney General (the "OAG") in both their individual and official

capacities, and the pending Motion to Dismiss has been filed on their behalf by the OAG.

The Motion to Dismiss argues that Plaintiff has failed to properly serve Gooch,

Grubich, and Dockery in their individual capacities, as Plaintiff attempted service on these

individuals at DJJ and Beaumont—their former places of employment.   (Mem. of Law in

Supp. of Defs.' Mot. to Dismiss 1, n.3, Jan. 21, 2015, ECF No. 16.)   The motion indicates

that Gooch, Grubich, and Dockery do not join in the motion, as they are not represented by

the OAG in their individual capacities, but Grubich joins the motion in his individual

capacity to the extent he challenges the sufficiency of process.   (*Id.*)   Nevertheless, the

---

[2] Hereinafter, the Court will refer to Defendants Block, Tignor, Parrish, Johnson, Dixon, Gooch, Dockery, and Grubich, collectively, as the "Individual Defendants."   At times, the Court may distinguish between the Individual Defendants sued in their individual capacities (Block, Tignor, Parrish, Johnson, Gooch, Dockery, and Grubich), and the Individual Defendants sued in their official capacities (Block, Tignor, Parrish, Johnson, and Dixon).   The Court will simply use "the defendants" when referring collectively to DJJ and the Individual Defendants.

Motion to Dismiss seeks dismissal of all claims against all defendants for lack of jurisdiction, insufficient service of process, and failure to state a claim upon which relief may be granted under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6), respectively.[3] Part Two of Plaintiff's Complaint, entitled "Facts of the Case cont." and beginning on the sixth page of the Complaint, includes thirteen numbered paragraphs.[4] The Court construes each numbered paragraph as a separate set of circumstances giving rise to an independent cause of action, and in some cases multiple causes of action, against each defendant in their aforementioned capacities, set forth as follows:

Paragraphs 1 and 2 ("OIG Investigation Claims"): Racial Discrimination and Retaliation, in violation of Title VII and 42 U.S.C. § 1981;

Paragraphs 3 through 5; 7 and 8 ("EDR Grievance Claims"): Review of Hearing Officer Decisions; Racial Discrimination and Retaliation, in violation of Title VII and 42 U.S.C. § 1981;

Paragraph 6: Review of Hearing Officer Decision; Americans with Disabilities Act violation;

Paragraph 9 ("EDR Grievance Claim"): Review of Hearing Officer Decision; Racial Discrimination and Retaliation, in violation of Title VII and 42 U.S.C. § 1981; Hostile Work Environment, in violation of Title VII;

Paragraphs 10 and 12 ("November 2012 Incident"): Review of Hearing Officer Decision; Racial Discrimination and Retaliation, in violation of Title VII and 42 U.S.C. § 1981; Due Process Violations under Fifth and Fourteenth Amendment; Malicious Prosecution and False Arrest;

---

[3] Because this Court has determined that even if Gooch, Grubich, and Dockery were properly served, Boykin's claims against them in their individual capacities would not survive, the Court will not analyze Defendants' Motion to Dismiss under Rule 12(b)(5). Dismissal of those defendants not properly served, and therefore, not before the Court, is within the Court's authority under 28 U.S.C. § 1915(e)(2), as Boykin has been permitted to proceed in this action *in forma pauperis*. (Order, Dec. 11, 2015, ECF No. 2.); *see also* 28 U.S.C. § 1915(e)(2)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]").

[4] The Court will cite to this portion of Boykin's Complaint as "Compl. pt. 2, ¶ [paragraph number], at [page number]."

Paragraph 11: Family Medical Leave Act violation; and

Paragraph 13: Age Discrimination in Employment Act violation.

Given the numerous claims and the various factual circumstances underlying each, the Court will set forth the facts relevant to each claim in its discussion regarding the merits. As required, the Court will, of course, assume Plaintiff's well-pleaded allegations to be true, and view all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

## II.   Legal Standard

### A.   Fed. R. Civ. P. 12(b)(1)

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. If a defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint are presumed true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780-81 (E.D. Va. 2002). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219. In this case, the defendants do not challenge the veracity of

Plaintiff's jurisdictional allegations; therefore, the Court will confine its analysis to the four-corners of Boykin's Complaint, and the exhibits attached thereto.

**B.      Fed. R. Civ. P. 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must assert "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Plaintiff proceeds *pro se*, the Court endeavors to liberally construe the allegations in the Complaint, however inartfully pleaded. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)). The Court, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* The requirement of liberal construction also does not excuse a clear failure in the pleading to allege a federally cognizable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir.

7

1990).   As the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*]

litigants cannot, of course, be expected to frame legal issues with the clarity and precision

ideally evident in the work of those trained in law, neither can district courts be required to

conjure up and decide issues never fairly presented to them."   *Beaudett*, 775 F.2d 1274,

1276 (4th Cir. 1985).

Generally, a district court does not consider extrinsic materials when evaluating a

complaint under Rule 12(b)(6).   The court may, however, consider "documents

incorporated into the complaint by reference."   *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1

(4th Cir. 2006).   Here, Plaintiff has attached seventeen (17) exhibits to his Complaint,

which the Court will consider in ruling on the Motion to Dismiss.

### III.   **Discussion**

### A.   **Individual Capacity Claims under Title VII, ADA, ADEA Claims**

Boykin's Complaint alleges several theories of liability under Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e, *et seq.*, in Paragraphs One

through Five, Seven through Ten, and Twelve against both the Individual Defendants, as

well as DJJ.   (Compl. pt. 2, ¶¶ 1–5, 7–10, 12, at 6–9.)   His Complaint also appears to

bring individual capacity claims under the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12132, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29

U.S.C. § 621.   (Compl. pt. 2, ¶¶ 6, 13, at 7, 9.)

The Fourth Circuit has limited liability for violations of Title VII, the ADA, and the

ADEA to employers, concluding that employees cannot be held liable in their individual

capacities.  *Lissau v. So. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (Title

VII); *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (ADA); *Birkbeck v. Marvel*

*Lightning Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) (ADEA).   Accordingly, all claims

under Title VII, the ADA, and the ADEA against Gooch, Dockery, Grubich, Block,

Tignor, Parrish, and Johnson in their individual capacities will be dismissed with prejudice.

## B.    Claims Arising from Inspector General Investigations

In Paragraphs One and Two of his Complaint, Plaintiff refers to two (2)

investigations he initiated with the DJJ Office of the Inspector General ("OIG") regarding

supervisory misconduct.   (Compl. pt. 2, ¶¶ 1–2, at 6; Exs. 1–2, ECF Nos. 7-1, 7-2.)

Boykin alleges that the investigation he initiated on September 23, 2006, arising from an

August 22, 2006 incident and resulting in his administrative suspension, prompted a

racially motivated comment from a supervisor, who is not named as a defendant in this

case.   The second investigation, initiated by Boykin on May 4, 2007, relates to an incident

occurring in February 2007, which also resulted in Plaintiff's suspension.   Plaintiff alleges

that he was suspended by Grubich, and another supervisor, who is not named as a

defendant in this case, in retaliation for initiating the OIG investigation.

Plaintiff brings racial discrimination and retaliation claims related to his initiation of

the 2006 and 2007 OIG investigations under 42 U.S.C. § 1981(a).[5]   (*See* Compl. pt. 1, at 3

("Federal statute 42 U.S.C. section 1981(a)permits [*sic*] a private lawsuit for money

---

[5] Section 1981 outlaws discrimination in the making and enforcement of private contracts, affording"[a]ll
persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts, to
sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of
persons and property."   42 U.S.C. § 1981(a).   Subsection (b) clarifies that "the term 'make and enforce
contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment
of all benefits, privileges, terms, and conditions of the contractual relationship."   42 U.S.C. § 1981(b).

damages for any employee who has been the victim of ['']intentional discrimination['] in employment.'').) Because the named defendants are state actors, Boykin cannot recover under section 1981. *See Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701 (1981) (holding when claim is made against state actor, § 1983 provides exclusive federal damages remedy for violation of rights guaranteed by § 1981).[6] Accordingly, the Court will dismiss Boykin's section 1981 claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To the extent that Plaintiff also attempts to state causes of action for racial discrimination and/or retaliation arising from the initiation of the OIG investigations under Title VII[7] such claims will be dismissed. Before filing suit under Title VII, a plaintiff is required to file a charge with the EEOC and exhaust his administrative remedies. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). A failure to file an EEOC charge regarding a Title VII claim deprives the federal court of subject matter jurisdiction, as the scope of a plaintiff's lawsuit is determined by the charge's contents. *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013). "Only those discrimination claims

---

[6] Even if the Court construed Boykin's racial discrimination and retaliation claims relating to the OIG investigations as arising under section 1983, such claims would also be dismissed, as they are barred by the statute of limitations. *See Mveng-Whitted v. Va. State Univ.*, 927 F.Supp.2d 275, 278 (E.D. Va. 2013). Section 1983, the federal statute providing a remedy for violations of civil rights by state actors, does not have its own statute of limitations, but instead borrows Virginia's two-year statute of limitations for personal injury actions. *Almond v. Kent*, 459 F.2d 200, 203–04 (4th Cir. 1972). A four-year statute of limitations applies to claims in which a plaintiff uses section 1983 as a vehicle to vindicate his rights under section 1981 when suing a state actor. *Mveng-Whitted*, 927 F.Supp.2d at 279. Here, Boykin did not file suit until December 2, 2014. Thus, his claims relating to the 2006 and 2007 OIG investigations are barred by the statute of limitations.

[7] "Title VII renders it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-2(a)(1)).

stated in the initial [EEOC] charge, those reasonably related to the original complaint [underlying the charge], and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

While Boykin filed an EEOC charge and received a Notice of Right to Sue, which he attached to his Complaint (Compl. Exs. 15–17; ECF Nos. 7-15, 7-16, 7-17), the alleged retaliation related to the initiation of the OIG investigations falls outside the scope his EEOC charge, because the investigations, and any retaliation therefrom, occurred in 2006 and 2007. Boykin's EEOC charge encompasses only incidents occurring between November 1, 2012 and June 30, 2013, and those reasonably related to conduct during that time period. (*See* Compl. Ex. 17, ECF No. 7-17); *Jones*, 551 F.3d at 300. Boykin's charge complains that "Johnson deliberately made a false claim that [he] assaulted an inmate." (Compl. Ex. 17.) Plaintiff does not allege that Johnson was in any way associated with the alleged retaliation resulting from his initiation of the OIG investigations. Furthermore, having occurred approximately six years earlier, it seems unlikely that the OIG investigations and any conduct resulting therefrom would have been discovered through an investigation of Johnson's acts described in the EEOC charge such that the two incidents would be considered reasonably related. *Jones*, 551 F.3d at 300. Accordingly, any Title VII claim related to the 2006 and 2007 OIG investigations is procedurally barred, as Boykin has failed to exhaust his administrative remedies and the time within which to do so has expired. *Hentosh v. Old Dominion Univ.*, 767 F.3d 413,

417 (4th Cir. 2014) ("If an individual fails to file an administrative charge with the EEOC

within one hundred eighty (180) days after an alleged discriminatory act occurs (or three

hundred (300) days if the aggrieved person presented the claim to a state deferral agency),

then the EEOC charge is not considered timely filed.").

Accordingly, the Court will dismiss Plaintiff's racial discrimination[8] and retaliation

claims related to his initiation of the 2006 and 2007 OIG investigations under Fed. R. Civ.

P. 12(b)(1) (Title VII), and Fed. R. Civ. P. 12(b)(6) (42 U.S.C. § 1981).

**C.     Claims Arising from Employment Dispute Resolution Grievances**

In Paragraphs Three through Ten of his Complaint, Boykin references a number of

Commonwealth of Virginia Employment Dispute Resolution ("EDR") grievances, which

he filed in accordance with personnel policy between October 19, 2007 and

November 29, 2012.   (Compl. pt. 2, ¶¶ 3–10, at 7–9; Exs. 3–8; ECF Nos. 7-3 through

7-8.)   Boykin appears to disagree with the evidentiary process and documentation

corresponding with his EDR grievances.   (*See* Mot. Appl. Den. Defs.' Mot. to Dismiss

4–5, ECF No. 17.)   It is unclear to the Court what relief Plaintiff seeks with respect to

these grievances, as it appears Boykin received a favorable disposition in a number of

instances.   (*See, e.g.,* Compl. Ex. 3, ECF No. 7-3 (hearing officer's decision noting

disposition favorable to Boykin regarding grievances filed Oct. 19, 2007, Nov. 1, 2007,

Apr. 22, 2008, and Sept. 11, 2008).)

---

[8] That Boykin's violation reports submitted to initiate the OIG investigations fail to mention retaliation
because of his race has not gone unnoticed by the Court.

To the extent that Plaintiff seeks review or enforcement of these decisions, this Court has no such authority.   The Virginia General Assembly vests sole authority to review decisions of hearing officers regarding EDR grievances in the state circuit courts, Va. Code § 2.2-3006, and even the state courts' authority to review those decisions is severely circumscribed.  *Dep't of Envtl. Quality v. Wright*, 256 Va. 236, 241–42 (1998). No federal jurisdiction exists over such a review; therefore, Boykin's EDR grievance claims in Paragraphs Three through Ten of the Complaint, to the extent they exist, will be dismissed with prejudice under Fed. R. Civ. P. 12(b)(1).

In the following subsections, the Court will address other potential claims related to the EDR grievances referenced in Paragraphs Three through Nine, but will take up additional claims related to the grievance at issue in Paragraph Ten in Part III.D, *infra*.

### i.   Racial Discrimination and Retaliation under Title VII and 42 U.S.C. § 1981

To the extent that Plaintiff alleges racial discrimination and/or retaliation claims in Paragraphs Three, Four, Five, Seven, Eight, and Nine under Title VII and section 1981 any such claims will be dismissed for the reasons stated in Part III.B, *supra*, as those claims fall outside the scope of Boykin's EEOC charge, and 42 U.S.C. § 1981 does not provide Boykin with any remedy against a state actor.

### ii.   Americans with Disabilities Act

In Paragraph Six of his Complaint, Plaintiff alleges that he was denied a chair with back support based on his lower back issues, despite his submission of a medical request from a doctor.   (Compl. pt. 2, ¶ 6, at 7–8.)   To the extent that this allegation may be construed as a cause of action for employment discrimination under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, that claim will be dismissed. It is well-settled that a plaintiff is required by statute to exhaust his administrative remedies by filing a charge with the EEOC before pursuing an ADA claim in federal court. *Sydnor v. Fairfax Cnty*, 681 F.3d 591, 593 (4th Cir. 2012). The facts alleged in Boykin's EEOC charge are unrelated to his claim in Paragraph Six regarding his request for a chair to accommodate his back issues. Furthermore, while Boykin had the opportunity to denote on the EEOC Charge of Discrimination Form that the discrimination of which he complained was based on disability, he selected only discrimination based on race, retaliation, and age, excluding disability. (Compl. Ex. 17.) Boykin failed to satisfy this administrative prerequisite to filing suit under the ADA, and the time within which to do so has expired. *See Hentosh*, 767 F.3d at 417. Consequently, his ADA claim will be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

      iii.    Hostile Work Environment

It appears Boykin asserts a hostile work environment claim under Title VII in Paragraph Nine, relating to an incident occurring on June 7, 2011, ("EDR Grievance Dated July 5, 2011," Compl. Ex. 7, ECF No. 7-7), and such claim will also be dismissed for lack of jurisdiction, as beyond the scope of his EEOC charge. *See supra* Part III.B.

Additionally, while Boykin describes hostile, and certainly unwelcome conduct, his allegations fail to include facts indicating that the conduct resulted because of his race. *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010). Boykin's conclusory assertion of "[t]his discriminatory action" is insufficient to survive Rule 12(b)(6) scrutiny. (Compl. pt. 2, ¶ 9, at 8.) Furthermore, the hostile conduct of which he

complains implicates various individuals, none of whom are named as defendants in this case. (*Id.* at Ex. 7.)   Accordingly, Boykin's hostile work environment claim will be dismissed under Fed. R. Civ. P. 12(b)(6).

**D.    November 2012 Incident**

The primary incident of which Boykin complains occurred on November 11, 2012. (Compl. pt. 2, ¶ 10, at 8.)   On that day, Boykin was part of a four-person extraction team responding to an incident in a housing unit at Beaumont. (*Id.*)   Plaintiff alleges that Johnson falsely accused him of assaulting an inmate during the course of the incident, and that Grubich facilitated Johnson's false accusation by processing reports, statements and other administrative paperwork regarding the incident. (*Id.*)   Dockery then "signed off" on that documentation and forwarded it to Gooch. (*Id.*)   Plaintiff indicates that Tignor also received this information, which prompted him to begin an internal investigation of the incident. (*Id.*)   As a result of that investigation, Boykin was arrested for the assault and battery of an inmate on November 28, 2012.[9] (*Id.*)   Thereafter, on May 1, 2013, the charges were dismissed. (Compl. Ex. 9, at 2, ECF No. 7-9.)   Ultimately, the investigation and events following the November 2012 incident resulted in Boykin submitting an "Involuntary Separation Letter," on June 10, 2013, through which he terminated his employment. (Compl. pt. 2, ¶ 12, at 9.)

Plaintiff argues that the acts relating to the November 2012 incident were discriminatory and retaliatory, resulting in his constructive discharge. (*Id.*)   He also

---

[9] Boykin alleges he filed an EDR grievance relating to his arrest on November 29, 2012. (Compl. pt. 2, ¶ 10, at 9.)   The Court dispensed with Boykin's requests for review of his EDR grievances in Part III.C, *supra*, and will not readdress issues related to the grievance dated November 29, 2012.

15

contends that based on the incident his due process rights have been violated, as he has

been deprived of "significant liberty and property interest[s]" under the Fifth and

Fourteenth Amendments. (*Id.* pt. 2, ¶ 10, at 9.) It appears Boykin also alleges state law

causes of actions for false arrest and malicious prosecution. (*Id.* pt. 2, ¶¶ 10, 12, at 9.)

   i.   Racial Discrimination and Retaliation under 42 U.S.C. § 1981

For the reasons stated in Part III.B, *supra*, section 1981 does not provide Boykin

with any remedy against defendants who are state actors. Accordingly, any cause of

action brought under that section for racial discrimination and retaliation related to the

November 2012 incident will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[10]

   ii.   Racial Discrimination and Retaliation under Title VII[11]

The crux of Boykin's discrimination and retaliation claims is his assertion that

Johnson falsely accused him of assaulting an inmate, and consequently, Gooch, Dockery,

Grubich, and Tignor pursued an investigation into the accusation, which resulted in

criminal charges being filed against him. Boykin implicitly asserts that Johnson, Gooch,

---

[10] Were the Court to construe Boykin's section 1981 claims under section 1983, his racial discrimination and retaliation claims would be dismissed for the reasons stated in Part III.D.ii, *infra*, as Boykin has failed to state *prima facie* cases of racial discrimination and retaliation under Title VII, and the elements required under Title VII and either section 1981 or section 1983 are the same. *Gairola v. Virginia Dep't of General Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

[11] Initially, the Court rejects Defendants' argument that Boykin's Title VII claim related to the November 2012 incident is time barred. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss 11.) Defendants correctly point out that a 300-day statute of limitations applies to claims such as Boykin's; his charge of discrimination was not filed until January 24, 2014; and thus, incidents occurring prior to March 30, 2013 fall outside the 300-day window. (*Id.*); *see also* 42 U.S.C. 2000e-5(e)(1). Boykin's criminal charges relating to the November 2012 incident, however, were ongoing until at least May 1, 2013. (Compl. Ex. 9.) Construing Boykin's *pro se* Complaint liberally, the Court finds that Boykin's claims arising from the November 2012 incident reasonably relate to his EEOC charge or would have been developed by a reasonable investigation of the facts alleged in his EEOC complaint, such that they are not barred by the statute of limitations. *See Evans*, 80 F.3d at 963.

Dockery, Grubich, and Tignor took such actions because of Boykin's race, and as a result, he submitted an "Involuntary Separation Letter," constituting a constructive discharge. To adequately plead constructive discharge in this case, Boykin must plausibly allege two elements: (1) the deliberateness of the defendants' actions, motivated by racial bias, and (2) the objective intolerability of the working conditions. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–187 (4th Cir. 2004). "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the plaintiff to quit." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 237 (4th Cir.1999) (en banc), *cert. denied*, 528 U.S. 1189 101 (2000)) (quotation marks omitted).

Here, Boykin makes only the conclusory allegation that he was constructively discharged. While he states that he resigned "due to the continued intolerable working conditions and humiliation (arrest) by [his] employer calculated to encourage [his] resignation" (Compl. pt. 2, at 5), the facts alleged in no way demonstrate any racially motivated action deliberately intended to encourage Boykin to resign. He implies that the retaliation and harassment he endured—the investigation and subsequent criminal charges—occurred because of his race, yet he neglects to indicate his own race, the race of his alleged harassers, or whether the race of his alleged harassers differed from his own.[12] While being the subject of an internal investigation and facing criminal charges is certainly an unwelcome situation, Boykin has failed to allege facts indicating that such action was

---

[12] Although Boykin does not allege his own race in his Complaint, his EEOC charge of discrimination, attached as an exhibit, indicates that he is African-American. (Compl. Ex. 17.)

discriminatory, or taken in an effort to force his resignation. Absent facts indicating that the investigation would not have been pursued but for Boykin's race, it is equally plausible that the defendants pursued the investigation into Johnson's accusation to determine its legitimacy consistent with DJJ policy and procedures.

Boykin has failed to adequately allege any racial bias motivating the investigation into the November 2012 incident, and consequently, he has failed to plausibly allege constructive discharge. Absent a plausible allegation of constructive discharge, Boykin's Complaint is devoid of any adverse employment action—a requisite element in Title VII discrimination and retaliation claims.[13] Accordingly, such claims must be dismissed for failure to state a claim upon which relief may be granted.

### iii. Due Process Claim

Boykin also asserts a procedural due process claim arising from the investigation of, and his arrest for, the November 2012 incident. His Complaint states the following:

> The defendants['] action created a type of malicious
> prosecution based on 'guilt by association' which violated Mr.

---

[13] As previously noted, "Title VII renders it 'an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (en banc) (quoting 42 U.S.C. § 2000e-2(a)(1)). Absent direct evidence of racial discrimination, "the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

The anti-retaliation provision of Title VII "forbids an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190; *see also Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

> Boykin's rights under the V and XIV Amendments to the U.S.
> Constitution on or about November 28, 2012. ... Mr.
> Boykin was denied notice of accusation, the right to confront
> his [would be] accusers, and of his presumption of innocence.
> ... The Plaintiff is being deprived of significant liberty and
> property interest under Due Process Clause of the Fourteenth
> Amendment to the U.S. Constitution (i.e. the ability to decide
> who may visit or enter his home).

(Compl. pt. 2, ¶ 10, at 9.)

Because Defendants are state, and not federal, actors, Boykin's due process claim is

governed by the Fourteenth Amendment rather than the Fifth Amendment. *Winfield v.

Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997). The Due Process Clause of the Fourteenth

Amendment provides that no state shall "deprive any person of life, liberty, or property,

without due process of law." U.S. Const. amend. XIV. "To state a procedural due

process violation, a plaintiff must (1) identify a protected liberty or property interest and

(2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*,

780 F.3d 245, 248 (4th Cir. 2015).

With respect to the first assertion—that Defendants' conduct "created a type of

malicious prosecution based on 'guilt by association'"—the liberty or property interest of

which Boykin feels he has been deprived is unclear. Boykin appears to associate this

conduct with alleged violations of the rights afforded criminal defendants during a criminal

prosecution—namely, notice of accusation, right to confront his accusers, his presumption

of innocence, and the receipt of *Brady* evidence. It is unclear how these alleged

constitutional violations are traceable to any conduct by the named defendants such that

Boykin has standing to maintain this claim against them. *See Miller v. Brown*, 462 F.3d

312, 316 (4th Cir. 2006) ("There are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury."). The named defendants in this matter, while they were involved in the initial internal investigation into Boykin's alleged assault of the inmate, would not have been involved in his criminal prosecution such that they could be liable for the alleged constitutional violations—assuming those allegations rise to the level of a constitutional violation.

Boykin's assertion that he has been deprived of "the ability to decide who may visit or enter his home" suffers the same deficiency. Assuming this deprivation rises to the level of a constitutional violation, he has failed to allege facts demonstrating that his inability to decide who may visit his home is traceable to the conduct of the defendants in investigating the alleged assault. Accordingly, Boykin's due process claim will be dismissed under Rule 12(b)(6).

v.   State Law Claims: Malicious Prosecution and False Arrest

Because this Memorandum Opinion dismisses all of Boykin's federal claims, the Court lacks jurisdiction over any claims arising under state law. Accordingly, to the extent Boykin attempts to state causes of action for malicious prosecution and false arrest arising under the laws of the Commonwealth of Virginia, those claims will be dismissed without prejudice.

20

E.    **Family and Medical Leave Act**

In Paragraph Eleven of his Complaint, Boykin asserts that "[o]n June 05, 2013 [he] submitted a request for a much needed Leave of Absence after fighting [his] criminal charges." (Compl. pt. 2, ¶ 11, at 9.)   He alleges that Dockery and Grubich denied his request for leave without valid reasoning in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*   (*Id.*)   Because it is the provision most applicable to the circumstances described, the Court presumes Boykin relies upon the FMLA's self-care provision, which entitles an employee to a leave of absence "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."   29 U.S.C. § 2612(a)(1)(D).

i.    Sovereign Immunity

The Motion to Dismiss argues that sovereign immunity bars Plaintiff's FMLA claim.   Defendants correctly assert that "an unconsenting State is immune from suits brought in federal courts by her own citizens[,]" *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), and "[t]his protection extends to state agencies[.]" *McCray v. Maryland Dept. of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (citing *Regents of Univ. Cal. V. Doe*, 519 U.S. 425, 429 (1997)).   Unless sovereign immunity has been abrogated or expressly waived, states and their agencies are immune from suit.   *McCray*, 741 F.3d at 483.   The Fourth Circuit has held that Congress did not validly abrogate the states' sovereign immunity with respect to violations of the FMLA self-care provision; therefore, Boykin's FMLA claim against DJJ, as an agency of the Commonwealth, and the Individual Defendants sued in their official capacities, must be dismissed, as his FMLA

21

claim is barred by the Eleventh Amendment. *Coleman v. Court of Appeals*, 626 F.3d 187, 194 (4th Cir. 2010), *aff'd plurality opinion*, 132 S. Ct. 1327 (2012).

    ii.    <u>Individual Capacity Claims</u>

With respect to the Individual Defendants sued in their individual capacities, Boykin's allegations mention only Dockery and Grubich.   Because Boykin's Complaint is devoid of any factual allegations giving rise to a right of relief against Gooch, Block, Tignor, Parrish, and Johnson, the FMLA claim against those defendants in their individual capacities will be dismissed, as Boykin fails to state a claim upon which relief may be granted under Rule 12(b)(6).

As to the individual capacity claims against Dockery and Grubich, Boykin alleges only that they denied his request "without valid reasoning" and labels the denial a "discriminatory action . . . in violation of the [FMLA]."   (Compl. pt. 2, ¶ 11, at 9.)   When a suit is brought against state officials such as Dockery and Grubich, the question arises as to whether that suit is a suit against the state itself. *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).   The mere use of the term "individual capacity" in a complaint against state officials does not transform an official capacity action into an individual capacity action. *Martin*, 772 F.3d at 195; *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1985).   This Court must, therefore, examine the substance of Boykin's FMLA claim against Dockery and Grubich to determine who the real, substantial party in interest is. *Martin*, 772 F.3d at 196.   To do so, the Court examines (1) whether the denial of Boykin's leave of absence was inextricably tied to the official duties of Dockery and Grubich; (2) if

22

Boykin's leave of absence had been granted, would the burden have been borne by the state; (3) would a judgment against the state officials be institutional and official in character such that it would operate against the state; (4) was the denial of Boykin's leave in furtherance of Dockery and Grubich's personal interests distinct from the state's interests; and (5) whether Dockery and Grubich acted without authority in denying Boykin's request for leave. *Id.* (internal citations and quotation marks omitted).

The answers to these inquiries unquestionably indicate that the real party in interest with respect to Boykin's FMLA claim is DJJ, an agency of the state. The Complaint includes no allegation that Dockery or Grubich acted without authority or in furtherance of their own interests. The decision to deny Boykin's requested leave was certainly tied to their official duties, and it cannot be disputed that had Dockery and Grubich granted Boykin's request for leave, DJJ would have borne the burden. Furthermore, should Plaintiff prevail on this claim, only Boykin's employer could provide the remedies statutorily available for a violation of the FMLA.[14]   In addition to punitive damages, which are not available under the FMLA, *see Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 666 (E.D. Va. 1998) *aff'd*, 182 F.3d 909 (4th Cir. 1999), Boykin requests equitable relief to put him in the same economic position he would have been in but for the alleged violation,

---

[14] The FMLA authorizes appropriate equitable relief, fees and costs, as well as the recovery of monetary damages where an employer has violated the FMLA.   29 U.S.C. § 2617(a).   Monetary damages, however, are expressly limited to the following: (1) compensatory damages equal to the amount of any wages, salary, employment benefits, or other compensation which he was denied or lost by reason of the violation; (2) interest on the compensatory damages; and (3) liquidated damages in certain circumstances.   29 U.S.C. § 2617(a)(1)(A).   By its own terms, the FMLA does not provide for punitive damages.   *Id.*; *Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 666 (E.D. Va. 1998) *aff'd*, 182 F.3d 909 (4th Cir. 1999).

which only DJJ, and not Dockery or Grubich, has the capacity to provide.   Accordingly,

Boykin's individual capacity claims against Dockery and Grubich, likewise, cannot

survive.   Boykin's FMLA claim will be dismissed in its entirety pursuant to Fed. R. Civ.

P. 12(b)(6).

**F.      Age Discrimination in Employment Act of 1967**

In Paragraph Thirteen, Boykin brings an age discrimination claim under the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, against both DJJ

and the Individual Defendants based upon the following allegation:

> 13.   Myself and numerous current and former employees have had
> discussions concerning "out with the old and in with the new". [*sic*] I
> was the oldest officer at 54 years of age out of approximately 40−45
> . . . at time of separation of employment.

(Compl. pt. 2, ¶ 13, at 9.)

Although, generally, employers may be held liable for violations of the ADEA, in

Plaintiff's case, sovereign immunity shields DJJ, and the Individual Defendants sued in

their official capacities from liability.   Because, as with FMLA claims, sovereign

immunity has not been abrogated for ADEA claims, *see Kimel v. Fla. Bd. of Regents*, 528

U.S. 62, 91 (2000), DJJ, as an agency of the Commonwealth of Virginia, *see* Va. Code §

66-1, is shielded from liability, as are the Individual Defendants named in their official

capacities.[15]   Because sovereign immunity bars Plaintiff's ADEA claim against DJJ and

---

[15] Even if sovereign immunity did not bar Plaintiff's ADEA claim, it appears such claim would still be dismissed as Plaintiff has not adequately pled a *prima facie* case of age discrimination.  *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004).   To demonstrate a *prima facie* case of age discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a satisfactory level at the time of the adverse employment action; and (4) the adverse action was because of his age.  *Id.*   Boykin has failed to

the Individual Defendants in their official capacities, Plaintiff's ADEA claim will be dismissed with prejudice.

## IV.    Conclusion

For the reasons stated herein, the Court will grant Defendants' Motion to Dismiss, and dismiss the above-captioned matter with respect to all defendants.

Appropriate Orders will accompany this Memorandum Opinion.

                                         /s/
                              Henry E. Hudson
                              United States District Judge

Date: **Aug. 20 2015**
Richmond, Virginia

---

allege any adverse employment action attributable to his age.   Although this Court is not convinced that Boykin's "involuntary separation" would qualify as adverse employment action, assuming it does, Boykin's allegations attribute his resignation from DJJ to the events arising from the November 2012 incident after which he was arrested—not his age.